Case number 14-5044. James E. Murphy Appellant v. Executive Office for the United States Attorneys. Mr. Baha Baha for the appellant and Mr. Mayer for the appellee. May it please the Court, Ishaan Baha is amicus in support of Appellant James Murphy. I'd like to reserve two minutes for rebuttal. Your Honours, in this case, the government has failed to meet its limited burden under FOIA to show a logical connection between the information Mr. Murphy sought, the times at which two grand juries convened in 2008, and the exemption, in this case exemption number three, the government asserts to prevent that disclosure. So is your argument not that this couldn't be a logical explanation, but that it is not tied to your client's case? That's correct, Your Honour. Not that the government is required to provide specific information showing that Mr. Murphy would definitely be able to identify the grand jury witnesses. But what the government hasn't done here, either in the Brandon declarations, in any in-camera submission, or in an argument before this Court, is give any indication Mr. Murphy's case is in any way related to these worst-case hypotheticals. For example, the government hasn't even said that there were live grand jury witnesses before this grand jury. But you understand the way FOIA works, is that if one person can get it, anybody can get it. We can't look at the individualized circumstances of the requester, so it happens to be one area of the law where we actually have to think about worst-case scenarios. So what do we do then with that? That may be correct, Your Honour, in the sense that grand jury secrecy is very important, but in a number of cases this Court has drawn lines, even as applying Exemption No. 3 to grand juries. For example, in Hodge, where the specific identities of grand jury witnesses were going to be disclosed, there the Court said absolutely, as with the substantive direction of grand jury investigations. By contrast, in a case we cite in our brief, this was in the district court, it wasn't appealed here, but for example in North versus Department of Justice there, the Department of Justice did turn over heavily redacted transcripts which showed the dates on which grand jury testimony was given. So I think there are fine-line distinctions that can be drawn here, and the real question is when substantive information for grand juries can be turned over, then certainly, then in that situation, the exemption is properly applied. Rule 6e doesn't require that there be, it's not limited to substantive matters. It says any revelation of a matter occurring before the grand jury. How is that revealing that at 3 o'clock the grand jury convened to discuss case In Re X doesn't reveal a matter occurring before the grand jury? Your Honor, while I agree that is the language of Rule 6e, looking at this Court's precedence interpreting that rule, even in the context of Exemption 3, the Court has said there isn't a grand veil of secrecy over everything. So for example. That's right, but matters occurring before the grand jury, this is not just a rule. We all know Congress has codified this as a statute, so we have to take it at its word. I can't go, you didn't really mean that. I guess I'd like to hear an answer to how saying that at 3 o'clock they discussed this case is not revealing a matter occurring before the grand jury. Your Honor, as a literal matter, just the words a matter before the grand jury, I agree with you. But I think this Court's precedence indicates that it isn't any matter before a grand jury because again, then that would draw this grand veil of secrecy. And for example, documents placed before a grand jury would in any situation not be discoverable under FOIA. But there are counterexamples, or North versus Department of Justice. There, the times at which certain, and again, this is a district court case, so I'm not representing it was this Court. But there, the times at which, I'm sorry, the dates at which testimony were given were turned over by the government. And we cite other cases, too. Maybe they shouldn't have done that either. But for purposes of the statute, it seems to me it falls fairly within it. And yes, documents may come out. They usually come out in the course of another, they don't normally get handed out on the streets or released under FOIA. They come out, they come out in ordinarily a criminal prosecution. And Rule 6 has an exception for other court proceedings. That's correct, Your Honor. But I think in order for this exemption, number 3, as this Court has said, to be narrowly drawn, there does need to be a fact-specific focus on whether or not this would implicate grand jury secrecy. Because I think this Court's precedents indicate that is the concern with Rule 6C. And it's not just, and I can see certainly that there is in general a presumption of grand jury secrecy. But here, I don't think that secrecy is implicated. And the substantive point, though not in the words of the rule, I think can be divine from this Court's precedents. And the government, which has the grand jury transcript, the identities of the witnesses, has made no argument, save for these two worst-case hypotheticals, which again could be completely and utterly inapplicable here. And the government, if it can sustain the FOIA exemption on that alone, essentially would be drawing a broad veil of superstition. Because I'm trying to figure out, I get your point about what they've said, and this is not a worst-case scenario. I'm trying to figure out, so if you were to hold that you can have these times here, and then the next case comes along and it is the worst-case scenario. It is the guy with the cellmajor, the guy next door. And hmm, was he out on work release or was he out on the grand jury? Let's figure out what day and time they met. How do they say no? Because Rule 6 is a 3A statute, where there's no discretion in the agency. They don't get to make a balance, and it's not 3B. So how would the answer be different in that worst case? Your Honor, I think the government could make a submission to the district court and simply say that grand jury secrecy, which we believe 6E is meant to protect, really could be implicated here because there were live witnesses in the grand jury. And the live witness was anybody but the arresting officer, who of course the defendant would know the identity of. That's just an example. But it's the government's burden to make this FOIA exemption showing. In a way, whether it's a police officer before the grand jury or the guy in the next cell block before the grand jury, it is revealing a matter occurring before the grand jury. In that case, Your Honor, at least making a statement that there were witnesses before the grand jury. I mean, that's the government's argument here is that witness identity could be disclosed. The government hasn't even said if there were live witnesses yet. It's given two hypotheticals that the district court accepted, despite the fact that there was no time. If they got in a pattern of releasing it whenever there weren't live witnesses and not releasing it when they were, then people are going to figure out this matter before the grand jury. Gee, did this grand jury rely on live witnesses or did it rely on documents? Again, Your Honor, I think the government could make that argument. They could say even revealing the existence of the presence of a witness or not could implicate grand jury secrecy. But before the district court, the government, which has all the information in this matter, submitted two worst-case hypotheticals and has never indicated anything beyond that. In addition, the district court's inextricability finding, to the extent that this court might find that as an alternate ground to uphold the district court, should also be rejected. Could I just go back on one point? And I'll ask the government about this as well. I'm not really clear what we're talking about here. He has the information about the dates, and just hypothetically, he knows the grand jury met on Monday, Wednesday, and Friday of the first week of May. And the government says in its brief basically something to the effect that it's not too clear what more information would be useful, acknowledging that that's not the government's role here. And you take no position on the importance of the information. But if the information is simply that the grand jury convened at 8 a.m., it recessed at noon for lunch, it came back at 1 p.m., and then it recessed for the day at 4 p.m., that's a very different type scenario than if it's simply that at 10 a.m. to 11 a.m. that was the only time the grand jury was in session, or it only met that morning. And I'm just wondering whether or not, given that the exemptions are supposed to be narrowly construed, if your argument, or the point of your argument, isn't that what the government has said isn't sort of a rational and reasonable explanation, but doesn't it, consistent with the construction of the exemption, have to be quite specific in each case? Because in one case, disclosing, and we're over the hump at this point that they're disclosing the dates, that the grand jury sort of worked a normal, I'll call it 9-to-5 day, doesn't really tell you much more than that they met on that particular day. Whereas if the convening is more discreet, then it might convey information. If I might just answer the factual part of your question first, because I think there was some confusion in the district court briefing when Mr. Murphy was pro se on this issue and somewhat in the district court decision. We addressed this on page 17 and 18 of our brief. In Mr. Murphy's first FOIA request, which is on page 12 of the joint appendix, he asks for a variety of information, including when the grand jury set in general. I think that was a period of something like 21 months for one grand jury and 19 months for the other. He also asks when the grand jury convened and issued the indictment. And the government, in its first FOIA response, that's on page 43 of the joint appendix, at the beginning of July 2013, indicated the time that the grand jury sat in general and also the date on which the indictment issued. So you can derive then, obviously, that the grand jury sat on his case. And I think the first grand jury, it was a seven-month period. The second, it was a nine-month period. Mr. Murphy then asks in his second FOIA request, on page 31 of the record, for the dates and times of the sessions of the grand jury. That, I think, is fairly rare to ask, not merely when in a nine-month, you know, did the grand jury sit for a nine-month period, but rather what specific dates. And the government, in its response on page 47, declines to provide that information. So it's a somewhat long-winded answer. I'm sorry, Your Honor, but even though they discuss below purely in terms of times and we use that same nomenclature to be consistent in our brief, I think the fairer reading of what he wants are the dates and times. On Monday, it sat at this time. I see my time has expired. All right. Can I ask one quick question? Are you seeking an unredacted copy of the Byrd indictment? I'm sorry, Your Honor. Is your client seeking an unredacted copy of the Byrd indictment? He's not my client, Your Honor. I'm sorry. Your friend. Yes. Yes, Your Honor. My understanding is that he wants unredacted copies. I should say that in one of the cases it's his own case and the other cases, but that's my understanding of what he wants. And does he or you have any argument as to why the information that's been redacted would not fall within 60? Your Honor, I think it's impossible for us to make an argument because we haven't seen the in-camera submission. But in addition to that. That happens. You don't see it.  Agreed, Your Honor. But I think that this court in Juarez recognizing the position a FOIA requester could be in said the government has to submit an affidavit explaining why certain things have to be redacted. The government in the district court submitted no affidavit. And as far as we can tell, the district court essentially made a sua sponte inextricability finding. And so as an alternate ground, that can't stand. And we would ask the court if it determines this information is not protected to remand and ask the government to at least submit in open court an explanation for why this is inextricable. So we could then, or Mr. Murphy, I should say, could then make an argument about that. All right. We'll give you a couple minutes. Thank you. Mr. Mayor, good morning. May it please the court. My name is Peter Mayer, counsel for the United States government here at the Executive Office for United States Attorneys. Let me begin where the amicus left off with respect to the inextricability finding. We agree with the amicus to the extent that the amicus is only saying the following. If the court does reverse the finding that the times were properly withheld, then the inextricably intertwined information with those times is also disclosable. We agree with that. But that does not, it seems to me, challenge the district court's finding that if you find that the times are withholdable, then the other information that the district court also withheld was properly withheld because it was inextricably intertwined. In a sense, the plaintiffs aren't challenging the inextricably intertwined finding. They're only saying if you reverse the predicate, then you reverse the remainder as well. And with that, we fully agree. Can you talk about the predicate and explain why on earth the dates are revealable, but the times are not? At one point, Judge Millett, the government was also defending the disclosability of the dates. And the fact of the matter is we lost those cases. The courts in those instances found... In this court. They did not lose it at the court of appeals level. We lost those cases and did not appeal. Why not? I mean, why? It seems to me, quite frankly, that if I'm concerned about the cellmate, it's much more the date and the time. If you go on 3, 12, 1, 5, and you don't give any dates to go with it, it's absolutely meaningless. I think there's a reasonable argument to be made, Judge Millett, but I disagree with you as to which is the most sensitive. As the hypotheticals that appear in the Brandon Declaration suggest, it may not tell you very much to know when a grand jury met on a particular day if you're worried about whether a particular person was present before the grand jury that day. That makes no sense to me if you think about prisoners. They don't operate on... They don't have Uber come pick them up, zip into the grand jury room, and go back home. When they're going to court, it's an all-day affair. Then they come, they sit in the holding cell until it's time to talk. If they're gone, they're probably gone for the day. It's not going to be a question of was he here in the morning and not here in the afternoon. Revealing the date, they don't get that many field trips. If Joe's gone that day, and he's back, and they met that day, I'm going to put two and two together, I should think. I think that point is well taken, but the situation and the problem with respect to the disclosure of the identity of witnesses, Judge Millett, is not confined to the possible revelation or disclosure of witnesses who are incarcerated. That's your hypothetical. You all picked that story. It's not the only hypothetical, Judge Millett. For example, the second hypothetical that Ms. Brandon pointed out had to do with the possibility of the testimony of a family member. If a prisoner knows that a family member, say, has a particular schedule during the day, and it knows that a grand jury met at a particular time. I have the same question. Tell me if I'm wrong. Are grand juries working on that precise o'clock? My bet is that if you think about an ordinary appearance in court, you take off the day because you don't know when their grand jury is going to stop talking about case X and be ready to start talking about case Y, and you've got to be there when they're ready as opposed to predicting by the clock it's going to be 2 o'clock and not 4 o'clock or morning rather than afternoon. Am I just wrong about how grand jury presentations work? Are they that predictable? My experience with the grand jury was limited to six months, Judge Millett, but my understanding is the same as yours. You're making a good case. Okay, so then that point doesn't help you. The point that I think you're making is dates might very well be subject to nondisclosure as well. Right, but once you've revealed that they talked that day about this case, then whether it was 1 a.m. or 2 p.m. isn't revealing, adding anything. I think it can, particularly because these are not the only instances where this information might be sensitive. That's where I think I disagree with the amicus in terms of the way he's treating these hypotheticals. It's not whether these hypotheticals would apply specifically to Mr. Murphy's FOIA request and his situation. It's whether these hypotheticals show that the times in which the grand jury met might be sensitive and might, under certain circumstances, indicate who the grand jury's witnesses were. But the problem now is that you're changing the test, because the test has always been articulated, as I've seen it, tell me if I'm wrong, in terms of this information would reveal matters before the grand jury, not could reveal matters before the grand jury, and that's a big difference under FOIA. Your Honor, I can't recall the formulations in this court's precedents as clearly. I've seen them as would, I'll assure you. Sorry? I've seen would, and in your brief it's would, but then your arguments are about could. I don't think that the court's use of the term would in these situations in its precedents indicates that the court was intimating that there was a certainty, a certainty that disclosure of the information would always reveal. I think what the court must have meant when it used that term was that it posed a substantial probability or possibility. It was posing a risk. That's what, after all, the entire focus of grand jury secrecy is about. There's a lot more concreteness than a couple lawyers coming up with a couple hypotheticals that actually don't even hold together once you've probed them. There has to be something more than, well, I can think of a situation, which is really all the government has offered here, now that the dates are out of the bag. Now that the dates are out, all they've offered is, well, maybe, but then now you're telling me that's actually not how grand juries work. So how has any showing been made that the times are going to add anything different to anything to the dates here? Well, Judge Millett, I think you and I just disagree, notwithstanding the fact that we agree with the way that grand juries often operate. Let me ask you, since you say you served in the grand jury, is a grand jury subpoena, if it's issued to a person, does it simply list the date you are to appear, or is it a time-specific subpoena? Time meaning hour of the day. This was more than 20 years ago, Judge Millett. Well, then no need to respond, but, I mean, I just haven't seen that type of subpoena. My recollection is that they state both a date and a specific time, but maybe the same time. But like 9 a.m. That's right. It's not like the times are staggered during the day. So you're basically on call all day until the prosecutor comes out and says, we're ready for you. I think that's right. So what does the hour? And I guess the point, just following up on Judge Millett's point to the extent the standard is would, if the two hypotheticals that the government has come up with don't withstand analysis, then how have you met your burden? I agree with you, Judge Rodgers, that if the hypotheticals that were presented to the district court don't convince this body that there is a substantial risk that disclosing the times would allow the identification of the grand jury witness, then we have not met our burden. But I believe that the district court found it. What's the right remedy then? They win, or is there a remand for explanation? How does it work under CLARE? It seems to me, Judge Millett, that if the district court's decision based on the declarations was incorrect, that the disclosure of the times would reveal matters occurring before the grand jury, then I believe the relief is to not just remand for further proceedings, but with a remand consistent with this court's opinion, which would, I suppose, indicate that the times in which the grand jury convened or issued an indictment, which is the terms of the FOIA request, aren't inconsistent with 6-8. You don't get another chance to try to explain it? Is that your view? We... What, you already had one chance? To be honest with you, Judge Rogers, it seems to me that I can't think of a reason why in this situation the government ought to be given another opportunity to add to the declaration things that it could have presented in the initials. On this question about the dates, you said there hasn't been an appeal of court orders requiring the disclosure of dates. So does that mean it's the official position? Is there a determined position of the United States government that dates are not protected? Not to my knowledge, but to the extent that there are only decisions upholding the disclosability of dates, we certainly haven't argued, to my knowledge, that 6-E precludes the disclosure of dates. Well, there's at least one other Court of Appeals decision that has said dates and times can be withheld. And it must have been the U.S. government that got that decision, so I'm just very curious as to how these dates, which seems to me very revealing, what day did you talk about in re mullet? I hope you never are. What day did that happen? It seems very revealing, and whether it was 9 or 3 or 2 seems to tell me very little. Judge Millett, I'm not privy to the deliberations in terms of why those decisions have not been the subject of further review. But it wasn't resisted here. It wasn't resisted here.  No. So, just to be clear, you're resisting my suggestion that the government could be more specific as regards to this case as to why releasing times. I just want to be clear on that because what you're suggesting, I mean, I suppose I don't know what the Court will write, but if the Court were to say we're not persuaded. No. Upon reconsideration, Judge Rogers, there may be factors that are related to this specific case, which the amicus suggests was the proper focus of the government's burden to show, succeed. In responding to the earlier questions, I was really thinking in terms of whether the government ought to be given a possibility or the chance to make a more generic showing. My instinct is that we've had our chance to make a generic showing. Your question suggests, should the government be given an opportunity to show facts that are specific to this case? Well, my first question to counsel was to hint that that's where I was going in terms of what I was concerned about. All right? And so I was a little surprised when you answered as you did to Judge Millett, but if that's the government's position, that's the government's position. Fine. I would really like to revise that to this extent. I believe the government has had its fair opportunity to make its case with respect to the generic situation. I do believe that it ought to be given the opportunity to make a showing with respect to the applicability of succeed that are based on facts that are specific to the convening of these two grand juries. So the argument against that would simply be the government filed a motion for reconsideration. It filed a second declaration. It knows that the exemptions are to be narrowly construed. So it was on notice at that point that it had to address this case specifically as to why releasing the hours would be a problem. What's causing me a little concern here is that the district court commendably looked at the documents in camera, and I have no idea what's in those documents. And she may have found something and decided for whatever reason not to reveal it on the record. We simply don't know. I think that's a fair point, Your Honor. The focus that I initially had with respect to the in-camera review was that it was particularly valuable in terms of assessing the determination as to whether the records had reasonably severable information. But the district court also, it seems to me, as I reread the memorandum opinion this morning, seems to be relying on the in-camera review for the basic determination with respect to succeed. I was unable yesterday to locate the documents that were submitted in camera. I think we secrete them carefully in the U.S. Attorney's offices for purposes of protection of security. But your point is well taken. That is, the documents themselves that the district court reviewed may be illuminating with respect to the applicability of succeed beyond the factors that are set forth in the Brandon Declaration. You knew that was going to be my next question. Had you seen the documents? Yeah. All right. So we don't know what's in those documents. I'm afraid I do not, Judge Roberts. We don't seem to have it either. I tried to find it, and we don't seem to have it in the district court record. I'm sorry, Judge Mill. I can't hear you. We don't seem to have it here in the district court record. I tried to find it, to look at it, and couldn't find it. We were speculating about that yesterday. We thought that you probably would. If there's anything we can do to assist the court's process with that, we'll be glad to do that. Is there anything you can do? I mean, is there anything you can do? Is there another copy of these somewhere? I can inquire. If they're gone, we've got nothing to turn over, right? From a practical standpoint, the problem is that the attorneys who handled that in the district court are no longer in the attorney's office. I attempted to contact one of them late yesterday afternoon. He's not around this week, but he may be around next week. I think we can track them down if we're given more time. I think it would be very helpful, at least for me, to know when you found them and can we see them. We will report back to the court. This is not very… This is concerning information. The U.S. Attorney's Office doesn't know where these records are. Probably former members of the office did not take them with them. No, I'm sure they remain, Judge Rogers, but with respect to the preparation of these blanks. And I also wondered whether or not any sort of records destruction schedule got in here. I don't think that's very likely, Judge Rogers. If there are no further questions, other than the report that we've indicated we will make, we're prepared to submit to court a case for this court's disposition. When is this person coming back? My recollection is that he'll be back in his home office at the beginning of next week. All right. Can you get it in then by the end of next week? I will. And if for some reason he hasn't returned by then, let us know then. I will report back one way or the other by a week from Friday. Thank you. All right. Does Mr. Baha have any time left? No, Judge. All right. Why don't you take a minute? A minute. Your Honors, in my capacity as amicus, I just want to make sure the court is clear. The government did not turn over the specific dates at which the grand jury sat in this case, or neither of the two cases. The government turned over the date when the grand jury was impaneled and the date when the indictment issued. So that's a seven-month period. Those are the only dates. Okay. I was under the impression, it got very confusing in the briefing, I was under the impression that they also revealed the dates that they considered the two cases. No, Your Honor. I didn't want the court to have that impression. They did not turn over that information. So what precisely was turned over? The date the indictment was issued in your friend's case, but not in the other case? No, Your Honor. What was turned over was, in both cases, the date when the grand jury was convened, the date when that term ended, some 20, 24 months hence. But also, in both cases, the date the indictment issued. So Mr. Murphy has, at this point, the information for how many months was the grand jury deliberating on each case. What he does not have, and what I think is the fair reading of his request, is which days was the grand jury deliberating on these cases or receiving evidence and what times. And I think that's really the request before the court, and I think it wasn't clear below. Okay. Thank you for clarifying that. So given that clarification, what is your position then about the second Brandon Declaration? Your Honor, I think it's insufficient in this case for the reasons we've said, because it contains worst-case hypotheticals. And I was saying the government has all the information. It's now unclear what the government actually does. But theoretically, assuming the government has these records, the government could put before the district court something more than just these two potentially completely disconnected hypotheticals from the facts of this case. And we submit that that would be consistent with the purpose of FOIA and the narrow construing of the FOIA exemptions, as this Court has said. Do you have a view on FOIA procedure? If we were to determine the Brandon Declaration is insufficient, I assume your position is they had their chance, they're done. Yes, Your Honor. They've had two chances with the Brandon Declaration. I think the third time maybe with the charm, but I don't think it's fair in this case. Okay. All right. Thank you, Your Honor. Let me just finish with Mr. Bach. You were appointed by the Court as a friend of the Court, and we thank you for your very able assistance. Thank you, Your Honor. All right. Go ahead. Your Honor, with respect to the question as to what was requested and what was provided to the plaintiff in this case, the Court will find that. Just to make sure it gets recorded. Sorry. I want to make sure it gets recorded. At page 20 of the Joint Appendix, there appears the second FOIA request of the plaintiff, which asks for the disclosure of the dates in which you issued the indictments and the dates and times of sessions the grand jury convened. And on page 47 of the Joint Appendix, you have the response of the EEOC to that, saying, in effect, we're providing the dates. We're withholding the time. All right. Did you reveal what day they talked about Case 8CR-00433, or only when the grand jury was convened, when it was disbanded or whatever, dismissed, and when the indictment issued? Did you just reveal any additional dates? I did not. And you're arguing that those further dates as to Friday, March 7th, we talk about Case X. Those are protected. I think they're protected, but it's not clear to me, based on the nature of the request, Judge Millett, that that's what's being sought. That is, the request asks for the dates and times of sessions the grand jury convened. Convened to consider. Yeah, well, pro se, global request. I understood from the briefing that they wanted to know not just when the grand jury started and ended in the 20-month period when an indictment issued as a matter of public record. I thought my understanding from the briefing all along was that he also wanted to know what days he talked about these cases. Otherwise, there's no point to talk about. I think the briefing follows that, Your Honor. I'm simply making a point in terms of the relative narrowness of the FOIA request itself. No. Counsel for Appellant had cited us to these very pages of the joint appendix that you just cited us to. Yes. It says, when the grand jury is convened in cases 108. This is your answer, right? This is how you understood it. Convened in cases. Right? Not when they convened generally. No, no, no, no, no. I understand that. I'm simply using that in terms of, I understand it's limited to those cases. It's simply an application of what it means to say they convened. Okay. All right. Mr. Baja, did you have something you wanted to add? No, Your Honor. All right. I'm sorry. Can I ask you, do you understand the request to be for just when they, the grand jury's bill for a long time period, day one and day when they disbanded 20 months later and the date of the indictment, or do you understand the FOIA request, and not your client, but do you understand it to also include and what day did you talk about in Ray Lewis and Ray Smith? Absolutely the latter, Your Honor, and I don't think the concerns the government are raising about identifying grand jury witnesses would even be implicated necessarily by knowing that a grand jury sat for over a 20-month period. And the date indictment issue is normally a matter of public record. That's correct, Your Honor. And I think, to be clear, on page 47, the government's latter response maybe mistakenly or imprecisely suggests that the dates information has already been turned over, but it hasn't. And so I think his request for the specific dates and times is really what's at issue. Thank you. All right.
judges: Henderson, Rogers, Millett